UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| DONALD EAST,<br><br>Plaintiff,<br><br>vs.<br><br>WARDEN ROBERT DOOLEY, WARDEN BRENT FLUKE, PA BRAD ADAMS, PA KARISSA ZIMMER, RN DAYNA KLAWITTER, LPN BRITTANY HUBER, CPL. AHRENS, CPL. BARTA, CO MASTALIR, JANE DOES 1 AND 2 AND 3, OTHER UNKNOWN PERSONS AND ENTITIES, IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES;<br><br>Defendants. | 4:19-CV-04126-RAL<br><br><br>OPINION AND ORDER GRANTING MOTION TO DISMISS DEFENDANT BRAD ADAMS |

Plaintiff Donald East is an inmate at Mike Durfee State Prison in Springfield, South Dakota. His complaint under 42 U.S.C. § 1983 alleges that physician assistant Brad Adams (PA Adams) and various other individuals at Mike Durfee State Prison violated his Eighth Amendment rights by failing to provide him with adequate medical care. Doc. 1. PA Adams moved to dismiss East's complaint under Federal Rule of Civil Procedure Rule 12(b)(6), arguing that East has failed to state a claim upon which relief can be granted.[1] Doc. 19. East opposed PA Adams's motion, Doc. 21, and later moved for summary judgment on his claim against PA Adams, Doc. 26. This

---

[1] The other Defendants filed a motion for summary judgment, which this Court will address in a separate opinion and order.

1

Court stayed the response deadline to East's motion for summary judgment, finding that the motion would be moot if this Court granted PA Adams's motion to dismiss. Doc. 39. Because East's complaint does not plausibly allege that PA Adams was deliberately indifferent to his serious medical needs, this Court grants PA Adams's motion to dismiss and denies East's motion for summary judgment.

**I.   Facts**

East had foot surgery on August 2, 2017, and was prescribed Hydrocodone for pain. Doc. 1 at ¶ 34, 36; Doc. 21 at 7. On August 4, 2017, he went to Health Services complaining of "[e]xtreme pain urinating" and pain in his lower abdomen. Doc. 1 at ¶ 20. Records from this visit show that East reported "[p]ain with urination" and frequent urination with a strong stream, but denied burning, bleeding, or discharge. Doc. 1 at ¶ 21. He also reported cramping in the lower abdomen. Doc. 1 at ¶ 21. Nurse Rachel Tycz took a urine sample from East, which showed a "large amount of glucose" (East alleges ten times the normal range) and a "trace" amount of protein. Doc. 1 at ¶¶ 21–22. East claims that Nurse Tycz told him that he did not have a urinary tract infection (UTI), that his "sugar" was "extremely high," that he may have problems with his kidneys "and/or" diabetes, and that a blood test the coming Monday was likely. Doc. 1 at ¶ 23. PA Adams reviewed East's urine sample and ordered an HGBA1C test given the high level of glucose.[2] Doc. 1 at ¶ 21.

On August 5, 2017, East sent an electronic message to his family reporting extreme pain in his lower abdomen, having to grab the stall when urinating because it was so painful, and having used the bathroom over ten times. Doc. 1 at ¶ 24. Late that evening, East told Nurse Jane Doe 1

---

[2]An A1C test shows a person's average blood sugar level for the past two to three months. The test is commonly used to diagnose diabetes and prediabetes.

2

about issues with his toes and about his increased pain when urinating. Doc. 1 at ¶ 24. According to East, Nurse Jane Doe 1 replied that he should "[t]ell us if it gets worse." Doc. 1 at ¶ 24. East acknowledges that his medical records don't mention his complaint about increased pain when urinating but alleges that this is because Nurse Jane Doe 1 failed to keep accurate records. Doc. 1 at ¶ 25. He claims that Nurse Jane Doe 1 failed to provide him with constitutionally adequate medical care for his increased pain when urinating. Doc. 1 at ¶ 25.

On August 6, 2017, East sent an electronic message to his family saying that he had awoken three times early that morning in "extreme pain" and having to urinate. Doc. 1 at ¶ 26. He wrote that he "gushe[d] for minutes" when urinating and that his pain increased when he finished. Doc. 1 at ¶ 26. East alleges that he told Nurse Jane Doe 2 about the pain, but that she said there "really isn't anything we can do," although she would review his urine sample. Doc. 1 at ¶ 26. East's medical records do not mention his August 6 complaint, but East blames this on Nurse Jane Doe 2. Doc. 1 at ¶ 27. East messaged his family that he remained in "unbearable pain" after speaking with Nurse Jane Doe 2. Doc. 1 at ¶ 26. He claims that Nurse Jane Doe 2 failed to provide him with constitutionally adequate medical care "for days of continuously suffering increasing extreme pain while urinating." Doc. 1 at ¶ 27.

On August 7, 2017, East's A1C test showed that his glucose levels were normal. Doc. 1 at ¶ 28. East claims that PA Adams ordered no further treatment, and that he continued suffering "increasing extreme pain while urinating" as a result. Doc. 1 at ¶¶ 29–30. East's pain continued through August 8 and 9, with East writing in his log "[b]athroom pain urinating 1000/10 really thought I was going to die." Doc. 1 at ¶ 35.

East saw Dr. Terence Pedersen on August 9, 2017, for a post-operation checkup on his foot. Doc. 1 at ¶¶ 36–37. East reported increasing pain in his pubic area and lower abdomen along

with frequent urination. Doc. 1 at ¶ 37. Dr. Pedersen's records from the appointment note that East complained of "some pelvic pain" and reported having a negative UTI test. Doc. 1 at ¶ 37. Dr. Pedersen wrote that East was "not sure what his next step is for treatment options, and that is going to have to be up to the physicians at the prison." Doc. 1 at ¶ 37. According to East, Dr. Pedersen used his phone to determine that Keflex was an appropriate medication for a UTI. Doc. 1 at ¶ 38. Dr. Pederson prescribed Keflex for East's foot but wrote that "[t]his may also help with some of [East's] pelvic pain." Doc. 1 at ¶ 38.

East's pain resolved by the morning of August 10, 2017. Doc. 1 at ¶ 40. He wrote in his log that he had used the bathroom that morning with no pain, that the Keflex "really worked," and that he would have continued to suffer had Dr. Pedersen not prescribed it. Doc. 1 at ¶ 40.

East sued PA Adams under § 1983, alleging that Adams's response to his extreme pain, the high level of glucose in his urine, and his potential kidney problem violated the Eighth Amendment. Doc. 1. According to East, PA Adams's inadequate treatment caused East extreme pain and inflamed the tubules in his kidneys. Doc. 1 at ¶ 42.

## II. Standard of Review

On a motion to dismiss under Rule 12(b)(6), courts must accept a plaintiff's factual allegations as true and construe all inferences in the plaintiff's favor, but need not accept a plaintiff's legal conclusions.[3] Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768–69 (8th Cir. 2012). To survive a motion to dismiss for failure to state a claim, a complaint

---

[3]East's complaint survived initial screening under 28 U.S.C. § 1915A, Doc. 7, but it is still susceptible to a motion to dismiss under Rule 12(b)(6). Braun v. Hanson, No. 18-cv-3355 (JNE/ECW), 2020 WL 1496580, at *2 (D. Minn. Jan. 27, 2020) (rejecting the argument that a prisoner's survival of § 1915A's screening requirements bars defendants from moving to dismiss); Flying Horse v. Hansen, 4:16-CV-04119-KES, 2019 WL 6458179, at *1 n.1 (D.S.D. Jan. 22, 2019) (noting that the standards for screening and a Rule 12(b)(6) motion are similar but concluding that screening does not preclude later Rule 12 motions).

must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are unnecessary, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Iqbal, 556 U.S. at 678, "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely,'" Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Still, "conclusory statements" and "naked assertion[s] devoid of further factual enhancement" do not satisfy the plausibility standard. Iqbal, 556 U.S. at 678 (alteration in original) (citation and internal marks omitted).

The Eighth Circuit requires district courts to construe pro se complaints liberally. Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). This means "that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." Id. at 915. Importantly, however, this rule of liberal construction does not excuse a pro se plaintiff from alleging enough facts to support his claims. Id. at 914. That is, even though a plaintiff is proceeding pro se, the district court will not "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." Id. at 915.

**III.    Analysis**

    **A. Section 1983 and Deliberate Indifference**

Section 1983 provides a cause of action against any "person" who, acting "under color of" state law, deprives the plaintiff of "rights, privileges, or immunities secured by the Constitution."

5

42 U.S.C. § 1983. PA Adams is an independent contractor rather than a state employee. See East v. Minnehaha Cty., 4:16-CV-04122-RAL, 2019 WL 1434974, at *15 (D.S.D. Mar. 29, 2019). In providing medical care to a state inmate like East, however, PA Adams was a "willing participant[] in a joint action with public servants acting under color of state law" and thus may be sued under § 1983. Johnson v. Outboard Marine Corp., 172 F.3d 531, 536 (8th Cir. 1999); see also East, 2019 WL 1434974, at *15 (concluding that PA Adams could be sued under § 1983).

"The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from deliberate indifference to serious medical needs." Laganiere v. Cty. of Olmsted, 772 F.3d 1114, 1116–17 (8th Cir. 2014). A plaintiff who claims that a defendant was deliberately indifferent to his medical needs must show that he suffered "an objectively serious medical need, and that the 'defendant actually knew of, but deliberately disregarded, such need.'" Id. (quoting McRaven v. Sanders, 577 F.3d 974, 980 (8th Cir. 2009)); see also Farmer v. Brennan, 511 U.S. 825, 837 (1994) (holding "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"). "An objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or is so obvious that even a 'layperson would easily recognize the necessity for a doctor's attention.'" Jones v. Minn. Dep't of Corr., 512 F.3d 478, 481 (8th Cir. 2008) (quoting Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)). "[A]ctual knowledge of a serious medical need may be inferred from circumstantial evidence or from the very fact that the risk was obvious." Id. at 481–82 (citing Farmer, 511 U.S. at 842). "It is sufficient to show that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it." Letterman v. Does, 789 F.3d 856, 862 (8th Cir. 2015) (cleaned up) (quoting Farmer, 511 U.S. at 842). If knowledge is shown, the plaintiff must then show the defendants

"'knew that their conduct was inappropriate in light of' the risk to the prisoner." Id. (quoting Krout v. Goemmer, 583 F.3d 557, 567 (8th Cir. 2009)).

"Deliberate indifference may include intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed." Pietrafeso v. Lawrence Cty., 452 F.3d 978, 983 (8th Cir. 2006) (quoting Vaughan v. Lacey, 49 F.3d 1344, 1346 (8th Cir. 1995)). However, deliberate indifference demands that a plaintiff show more than negligence and gross negligence, "and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Langford v. Norris, 614 F.3d 445, 460 (8th Cir. 2010) (quoting Alberson v. Norris, 458 F.3d 762, 765 (8th Cir. 2006)). Rather, a plaintiff must show that the defendant's mental state was "akin to criminal recklessness." McCaster v. Clausen, 684 F.3d 740, 746 (8th Cir. 2012) (quotation omitted). When evaluating whether a defendant deliberately disregarded a risk, the court considers the "actions in light of the information [the defendant] possessed at the time, the practical limitations of [the defendant's] position and alternative courses of action that would have been apparent to an official in that position." Letterman, 789 F.3d at 862 (quoting Gregoire v. Class, 236 F.3d 413, 419 (8th Cir. 2000)).

**B. East's Claims**

PA Adams does not dispute that East has averred a serious medical need, but argues that East's allegations against him fall short of deliberate indifference. East argues that PA Adams's response to his extreme pain and potential kidney problem constitutes deliberate indifference. Doc. 21 at 9–14.

East's allegations do not create a reasonable inference that PA Adams was deliberately indifferent to his extreme pain when urinating and potential kidney problem. PA Adams began treating East's extreme pain and high levels of glucose on August 4, 2017, the very day he learned

of them. Doc. 1 at ¶ 21. He reviewed East's urine sample, determined that East did not have a UTI,[4] and ordered an A1C test to see whether East was diabetic. Doc. 1 at ¶¶ 21, 23. Although East argues that these actions did not relieve his pain, PA Adams was trying to determine the cause of East's pain in order to treat it effectively. PA Adams acted reasonably, and his lack of success in treating East's urinary pain does not make him deliberately indifferent. Dulany v. Carnahan, 132 F.3d 1234, 1241–42 (8th Cir. 1997) (refusing to find deliberate indifference where course of treatment was reasonable but unsuccessful). Moreover, PA Adams knew that East was already taking Hydrocodone because of his recent foot surgery. Doc. 1 at ¶ 34; Doc. 21 at 9–10; see also Doc. 1 at ¶¶ 24, 26. Under these circumstances, PA Adams's failure to prescribe some additional medication for East's pain does not rise to the level of deliberate indifference. See Smith v. Harris, 401 F. App'x 952, 953 (5th Cir. 2010) (per curiam) (concluding that doctors were not deliberately indifferent by failing to prescribe pain medication for an inmate's infected teeth when inmate was already prescribed pain medication for other ailments).

East argues that PA Adams should have done more for his pain and potential kidney problem after the August 7 A1C test showed that his blood glucose levels were normal. Doc. 21 at 11–13. He alleges that the normal glucose levels he showed in the August 7 A1C test suggest that he may have been suffering from a kidney condition called tubulointerstitial nephritis.[5] Doc. 1 at ¶¶ 18, 31–34. East posits that since the glucose in his urine wasn't caused by high levels of

---

[4] East's complaint is not entirely clear on whether PA Adams or Nurse Tycz determined that East did not have a UTI. Doc. 1 at ¶¶ 21, 23. East's brief asserts that PA Adams ruled out a UTI. Doc. 21 at 10.

[5] Tubulointerstitial nephritis "is inflammation that affects the tubules of the kidneys and the tissues that surround them." Merck Manual Consumer Version, merckmanuals.com/home/kidney-and-urinary-tract-disorders/kidney-filtering-disorders/tubulointerstitial-nephritis (last visited Sept. 18, 2020). It "may be caused by diseases, drugs, and toxins that damage the kidneys." Id.

8

glucose in the blood, it must have been the result of a kidney problem.[6] Doc. 1 at ¶¶ 31–34. He further alleges that tubulointerstitial nephritis "sometimes" causes "the symptoms of a urinary tract infection i.e. painful urination," and that when tubulointerstitial nephritis develops suddenly, "the urine may be strikingly different compared to the blood as in this case." Doc. 1 at ¶ 39. He claims that Adams "knew there might be a kidney problem," and therefore, should have physically examined him, sent his urine sample in for further testing, and ordered an x-ray or an ultrasound. Doc. 1 at ¶ 34.

These allegations do not plausibly suggest that PA Adams was deliberately indifferent. East does not allege that he had a prior record of kidney problems of which PA Adams was aware or that he has since been diagnosed with tubulointerstitial nephritis. He agrees that his complaints of pain on August 5 and 6 were not in his medical records, and he does not allege that Nurses Jane Doe 1 and Jane Doe 2 told PA Adams about his complaints on these days. What PA Adams knew on August 7, then, was that East had complained once of extreme pain with urination back on August 4, that East did not have a UTI, and that diabetes was not the cause of the high glucose level in East's urine. PA Adams's failure to treat East further under these circumstances did not as a matter of law "so deviate[] from professional standards" that it violated the constitution.

---

[6]Glycosuria, or glucose in the urine, is usually caused by high levels of glucose in the blood, such as when a person has diabetes. Merck Manual Consumer Version, https://www.merckmanuals.com/home/kidney-and-urinary-tract-disorders/disorders-of-kidney-tubules/renal-glucosuria?query=glucosuria (last visited Sept. 18, 2020); healthline, https://www.healthline.com/health/glycosuria (last visited Sept. 18, 2020). When a person has normal blood glucose levels but still has glucose in the urine, this is known as renal glycosuria. Merck Manual Consumer Version, https://www.merckmanuals.com/home/kidney-and-urinary-tract-disorders/disorders-of-kidney-tubules/renal-glucosuria?query=glucosuria (last visited Sept. 18, 2020); healthline, https://www.healthline.com/health/glycosuria (last visited Sept. 18, 2020). Renal glycosuria is a much rarer form of glycosuria that occurs when the renal tubules function improperly. https://www.healthline.com/health/glycosuria (last visited Sept. 18, 2020); National Organization for Rare Disorders, https://rarediseases.org/rare-diseases/renal-glycosuria/ (last visited Sept. 18, 2020).

Allard v. Baldwin, 779 F.3d 768, 772 (8th Cir. 2015) (explaining that where some medical care is provided, the plaintiff may "prove his case by establishing the course of treatment, or lack thereof, so deviated from professional standards that it amounted to deliberate indifference" (cleaned up and citation omitted)). Although East would have liked PA Adams to perform additional tests, his disagreement with PA Adams's treatment decisions does not establish deliberate indifference. Estelle v. Gamble, 429 U.S. 97, 107 (1976) (explaining that a "medical decision" not to order an X-ray or "additional diagnostic techniques" does "not represent cruel and unusual punishment"); Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995) ("[M]ere disagreement with treatment decisions does not rise to the level of a constitutional violation.").

East's allegation that PA Adams "knew" he had a kidney problem does not change this analysis. Indeed, PA Adams was performing diagnostic testing at the time to determine what East's problem, which subsequently subsided, in fact was. At any rate, none of East's allegations suggest that PA Adams's failure to diagnose him with tubulointerstitial nephritis or any other kidney disorder (if East ever did have either of these conditions) went beyond mere negligence. See McRaven v. Sanders, 577 F.3d 974, 982 (8th Cir. 2009) ("Negligent misdiagnosis does not create a cognizable claim under § 1983.").

East also asserts that PA Adams should have followed up with him about his pain after East complained of "some pubic pain" to Dr. Pedersen on August 9 and Dr. Pedersen prescribed him Keflex. According to East's brief, PA Adams had to approve the Keflex prescription, so he would have known about East's complaints to Dr. Pedersen. Doc. 21 at 11. PA Adam's failure to follow up with East after the August 9 appointment does not suggest intentional mistreatment or criminal recklessness, especially since East's pain resolved by the morning of August 10 and East never complained of pain with urination again. See Heard v. Chapman, 759 F. App'x 495, 498

(7th Cir. 2019) (holding that doctor's failure to conduct two-month follow-up appointment did not constitute deliberate indifference where prisoner's mouth pain stopped with treatment during that time).

IV. **Conclusion**

For the reasons stated above, it is hereby

ORDERED that PA Adams's Motion to Dismiss, Doc. 19, is granted. It is further

ORDERED that East's Motion for Summary Judgment, Doc. 26, is denied as moot.

DATED this 18th day of September, 2020.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE